UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA
THIRD DIVISION

UNITED STATES OF AMERICA,                                  Criminal No. 07-422  PJS/AJB

        Plaintiff,

v.                                                         **REPORT AND RECOMMENDATION**

JAMES RICHARD COOK,

        Defendant.

    James E. Lackner, Esq., Assistant United States Attorney, for the plaintiff, United States of America;

    Andrew H. Mohring, Esq., Assistant Federal Public Defender, for the defendant, James Richard Cook.

    This action came on for hearing before the Court, Magistrate Judge Arthur J. Boylan, on December 13, 2007, at the U.S. Courthouse, 300 South Fourth Street, Minneapolis, MN 55415. The magistrate judge issued an Order on Motions dated December 14, 2007, reserving defendant's motion to suppress statements, motion to suppress search and seizure evidence, and motion to suppress identification evidence for submission to the district court by Report and Recommendation.

    Based upon the file and documents contained therein, along with testimony and an exhibit received at hearing, and the arguments of counsel, the magistrate judge makes the following:

**Findings**

    St. Paul Police Officers Anthony Holte and Ron Townsend were on bicycle patrol in the St. Paul downtown skyway system at 8:32 a.m. on October 24, 2007, when they received a dispatch call advising them that the St. Paul TCF skyway branch bank in the Town Square building at

444 Cedar St. has just been robbed. The uniformed officers were in the skyway at a location approximately 60 to 100 yards from the TCF bank at the time of the notice. The dispatch advised officers that the bank robbery suspect was a heavy-set white male, 50 to 60 years in age, and wearing a blue baseball cap and flannel shirt. The man had been observed leaving the scene via a nearby escalator to the street level building entrance at the corner of 6th Street and Cedar Ave. The officers went down the escalator in pursuit and Officer Townsend headed east on 6th Street. Officer Holte went south on Cedar, and at 5th Street he observed a person matching the description of a heavy-set, 50 to 60 year old white male, walking towards the east on the 5th Street sidewalk. (Defendant's Exh. No. 1). The person was taking his shirt off as he walked at a fast, hurried pace, carrying a plastic grocery bag. Holte was on bicycle on 5th Street and he approached the man from behind and could see money in the plastic bag. The man, defendant James Cook, attempted to hide the bag as the officer got in front and told him to stop. Officer Holte drew his sidearm and told the suspect to kneel down on the sidewalk. Officer Townsend then arrived at the scene, placed handcuffs on the defendant, and advised him he was under arrest, at which time the defendant made a statement to the effect that he would have to go back to prison now. The defendant was promptly searched at the scene of the arrest and officers found a silver butter knife, a pair of glasses, a bag containing money, and two baseball caps–one blue and one gray. Following the search Officer Townsend commented to Officer Holte that he recognized the suspect as someone who had been arrested for bank robbery at few years ago. The defendant heard the officer's comment and stated, "yes, I robbed that one, now it's a Drake, and one before that too." Defendant was then placed in a squad car that had recently arrived. He was not given a Miranda warning at this time.

St. Paul Metro Transit Officer Peter Peterson was on patrol within one-to-two miles of the bank robbery and arrest area when he received a dispatch message asking that he go the TCF bank to pick up an eye witness to the robbery, a teller employed at the bank. The dispatch request was received approximately five-to-ten minutes after the initial robbery report. Officer Peterson promptly went to the bank. The bank doors were locked, but the officer met the bank manager and asked to meet the teller to bring her to an identification show-up. Officer Peterson met the witness, brought her to his vehicle parked at the 6th and Cedar entrance, and drove to the area of the 5th Street and Minnesota Ave. bus stop where other squad cars were located, including one in which the suspect was seated. The officer did not speak to the teller with regard to the robbery. When Officer Peterson arrived with the witness an officer escorted the suspect to where he could be observed by the teller who was then asked whether this was the bank robber. The witness remained in the car. She instantly stated "yes," without hesitation and without qualification. Peterson then called another officer to report that a positive identification had been made, and he brought the teller back to the TCF bank. The defendant was thereafter transported to a holding area at the Ramsey County jail to await booking. As he was being picked up to commence the booking process the defendant stated that he didn't rob the bank but had found the money.

FBI Special Agent Lisa Nielson learned of the TCF bank robbery and become involved in the investigation between 9:15 a.m. to 9:30 a.m., approximately one hour after the robbery occurred. Special Agent Nielson promptly went to the bank to interview the teller. The agent was advised that the witness had observed the robber in a well lit location with no obstructions. The teller was assisting another customer when the defendant asked her about opening an account. The teller

3

gave the defendant a rate sheet to examine until she finished assisting the first customer. The witness described the defendant as wearing a blue or green plaid jacket and a dark blue baseball cap. She had paid substantial attention to the defendant because of his stated intent to open an account. The witness stated that defendant did not initially show a weapon but he subsequently displayed the silver butter knife in a threatening manner.

Based upon the foregoing Findings, the magistrate judge makes the following:

**Conclusions**

**Show-up.** Suppression of identification evidence obtained in a show-up procedure whereby the bank robbery witness had personal interaction with the defendant and subsequently viewed the defendant near the scene of his apprehension, and positively identified the defendant as the person who had robbed the TCF bank, is not required. Defendant generally asserts by memorandum that the show-up procedure in this instance was overly suggestive. Though this argument is persuasive under circumstances whereby the victim viewed only a single suspect who was in handcuffs and being escorted by officers, Clark v. Caspari, 274 F.3d 507, 511 (8th Cir. 2001), show-up identifications do not necessarily entail due process violations and are not inherently impermissible. United States v. King, 148 F.3d 968, 970 (8th Cir. 1998). The court concludes that in the present instance the show-up identification was reliable, and therefore admissible, because under the totality of circumstances the show-up did not create a substantial likelihood of irreparable misidentification where the witness had substantial opportunity to view the suspect from a close distance at the time of the crime; the victim had given officers a description of the age, stature, and clothing worn by the robber, indicating that significant attention had been given to identifying factors; the victim was able to view the suspect within

a half hour after the initial contact; the suspect's dress and appearance was consistent with the initial report; and the victim identified the person as the bank robber with substantial certainty.  Id at 511-12. The court finds that suppression of pretrial identification evidence is not constitutionally required and further finds that preclusion of any in-court identification of the defendant by the victim is not warranted under the totality of circumstances presented here.

**Statements.**  Defendant James Richard Cook's statements to officers on October 24, 2007, were not obtained in violation of his constitutional rights and suppression of such statements is not required.  In each instance defendant's statements to officers were custodial, but were made spontaneously and voluntarily and were not the product of police interrogation or unlawful arrest. United States v. Waloke, 962 F.2d 824, 829 (8th Cir. 1992).  Because the defendant's statements were not a consequence of police interrogation, they were not obtained in violation of the defendant's Fifth Amendment privilege against self-incrimination or other rights under Miranda.  Id. (citing Rhode Island v. Innis, 446 U.S. 291, 299-301, 100 S.Ct. 1682, 1688-90 (1980).  Furthermore, the statements were not the result of defendant's will being overborne through police coercion or pressure and were not obtained in violation of defendant's Fifth Amendment Due Process rights on that account. Finally, the defendant had no reasonable expectation that his statements would be entitled to any privacy or confidentiality protections.

In particular, defendant's statement to Officers Holte and Townsend in which he admitted a prior bank robbery arrest was a voluntary comment and was not in response to either direct interrogation or a statement designed to elicit an incriminating response.  See  United States v. Hull, 419 F.3d 762, 767 (8th Cir. 2005).  Though the remark was made while defendant was in custody and

5

without the benefit of the Miranda warning, it was not the result of interrogation or coercion by law enforcement officers and was not the product of an unlawful arrest. Indeed, the officer's comment was a merely a recollection to which a response from the suspect was neither invited nor anticipated. There is no basis for suppression of defendant's statements.

**Search and Seizure.** Evidence obtained in the search of the defendant's person at the time of his arrest on October 24, 2007, was not unlawfully seized in violation of defendant's Fourth Amendment rights and suppression of the evidence is not required. The search of defendant's person was lawful as an incident to his valid arrest, and the seizure of evidence, including clothing items, a butter knife, and a bag of money, was lawful for that reason. United States v. Cabrera-Reynoso, 195 F.3d. 1029, 1032 (8th Cir. 1999).

Based upon the foregoing Findings and Conclusions, the Magistrate Judge makes the following:

**RECOMMENDATION**

The Court **hereby recommends** that:

1. Defendant James Richard Cook's Motion to Suppress Eyewitness Identification Made on October 24, 2007, be **denied** [Docket No. 25];

2. Defendant James Richard Cook's Motion to Suppress Statements, Admissions, and Answers of October 24 2007, be **denied** [Docket No. 27]; and

3. Defendant James Richard Cook's Motion to Suppress Evidence Obtained as a Result of Search and Seizure on October 24 2007, be **denied** [Docket No. 29].

Dated:     December 26, 2007

      s/ Arthur J. Boylan  
      Arthur J. Boylan  
      United States Magistrate Judge

Pursuant to Local Rule 72.2(b), any party may object to this Report and Recommendation by filing with the Clerk of Court, and by serving upon all parties, written objections which specifically identify the portions of the Report to which objections are made and the bases for each objection.  This Report and Recommendation does not constitute an order or judgment from the District Court and it is therefore not directly appealable to the Circuit Court of Appeals.  Written objections must be filed with the Court before January 11, 2008.

Unless the parties stipulate that the District Court is not required by 28 U.S.C. § 636 to review a transcript of the hearing in order to resolve all objections made to this Report and Recommendation, the party making the objections shall timely order and file a complete transcript of the hearing within ten days of receipt of the Report.